# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STEVEN E. TARPLEY, #307233 | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. L-10-2140 |
| J. MICHAEL STOUFFER, et al. | * | |
| Defendants | * | |

\* \* \*

## MEMORANDUM

Pending is a Motion to Dismiss or for Summary Judgment filed by Defendants Isais Tessema and Charlene Hetty Trenum (hereinafter "Medical Defendants"). ECF No. 20. Plaintiff opposes the motion and has cross-moved for summary judgment. ECF No. 35. Upon review of the papers filed, the Court finds a hearing in this matter is unnecessary. See Local Rule 105.6 (D. Md. 2010). For the reasons stated below, the Court will, by separate Order of even date, GRANT the Medical Defendants' Motion. The case will proceed as to the remaining Defendants, however.

## I.   Background

Plaintiff alleges that on September 25, 2007, while he was incarcerated at Western Correctional Institution (WCI), he was hit in his right eye by Lamont Jackson, the inmate with whom he shared a cell. ECF No. 1 at pp. 35 – 40. Plaintiff claims that Jackson was concerned he would be subjected to disciplinary proceedings because of the number of times the cell was being searched and asked to be moved to another cell. Jackson blamed Plaintiff for the additional searches. Plaintiff heard Officers Berry and Huff tell Jackson that they could not move him from Plaintiff's cell unless there was a problem. At approximately 5:00 pm on

September 25, 2007, Plaintiff retrieved his dinner tray at the cell door and Jackson assaulted him as he turned around. Plaintiff states that his eye was bleeding after the assault. Id.

Plaintiff states he was required to put in a sick-call slip[1] to have his eye examined, despite the fact that it was bleeding and he had asked Huff to take him to medical. Id. at p. 36. He claims when he reported to medical for treatment of his eye "several days later," Registered Nurse Charlene Trenum ("Trenum") performed a perfunctory examination of his eye and refused to allow Plaintiff to be seen by a doctor. Trenum wrote that "Inmate states something in eye, can't see out of it, headaches" and that Plaintiff's "right eye bruised, states he [fell] last Tuesday night, eye blood shot matted yellowish drainage." ECF No. 1 at p. 37. Trenum concluded that Plaintiff had acute conjunctivitis and prescribed sodium sulfacetamide. Id. Plaintiff complained to Barbara Newlon, the contract operations manager for the region, that Trenum had "brushed off" his eye injury as pink eye. Id. Plaintiff did not receive a substantive response from Newlon.

On October 4, 2007, Plaintiff was interviewed by Dr. Isais Tessema ("Tessema") regarding treatment for Hepatitis C. Plaintiff brought the condition of his eye to Tessema's attention and an order was written for Plaintiff to see a "specialist ASAP." Id. Plaintiff claims he was not seen by an eye doctor right away despite the order written by Tessema, and that he was not provided with pain medication during the delay. Id.

On October 11, 2007, Plaintiff was seen by the visiting optometrist who told Plaintiff his eye would need surgery. Id. at p. 38. Plaintiff was taken to see another optometrist in Cumberland, Maryland, who also determined that Plaintiff's eye required surgery. At approximately 6:30 pm on October 11, 2007, Plaintiff was taken by van to Frederick County Hospital where he was examined by a third doctor who stated that Plaintiff's eye was "as bad as it gets" and that he needed to be admitted to the Johns Hopkins Wilmer Eye Clinic immediately,

---

[1] Plaintiff did not put in a sick call request until October 3, 2007. See ECF No. 35 at Att., p. 6.

as there was no eye trauma team on call at their facility. Id. After getting clearance to do so, the transportation officers drove Plaintiff to Johns Hopkins, where he was admitted and underwent surgery for a ruptured globe, total retinal detachment with proliferative vitreoretinopathy, vitreous and subretinal hemorrhage, and traumatic chordial detachment. Id.

Plaintiff states the injury to his eye was obvious and Trenum's refusal to provide him with more medical care amounted to deliberate indifference to a serious medical need. He further alleges that there is a physician, a physician's assistant, and a nurse on call at WCI on a daily basis for purposes of responding to emergency medical issues, but he was not permitted to see one. ECF No. 1 at p. 39. Finally, he claims that Trenum has a history of arbitrarily deferring to security staff to the detriment of inmates' health and safety. Id. at p. 40.

Trenum claims Plaintiff did not tell her his eye was injured in an assault and, in fact, did not complain of an eye injury on September 26, 2007, when she evaluated him for a complaint of acid reflux. ECF No. 20 at Ex. A, p. 3. He also did not complain about the eye injury later that same day when another nurse drew blood for unrelated tests. Id. at Ex. C, pp. 1-3. When Plaintiff addressed Trenum on October 1, 2007,[2] about the eye injury, Trenum claims he told her he had something in his eye and could not see out of it and that he had fallen on September 25, 2007. Id. She observed that Plaintiff's right eye was bloodshot and matted with yellow drainage, then referred him to Anna Hammond, a nurse practitioner, for treatment of the eye. Id. at p. 5. Hammond diagnosed Plaintiff with acute conjunctivitis and prescribed eye drops. Id.

On October 4, 2007, when Plaintiff was seen by Tessema in the Infectious Disease Chronic Care Clinic, Plaintiff told Tessema that he had sustained an injury to his eye during a fight that occurred nine days prior. ECF No. 20 at Ex. A, p. 3. Tessema claims Plaintiff told him

---

[2] The sick call slip Plaintiff submits as an exhibit shows October 3, 2007, as the date of his initial request for treatment of his eye. ECF No. 35 at Att., p. 6. The records prepared by Defendants reflect the initial contact date as October 1, 2007. ECF No. 20 at Ex. C, p. 5.

3

that he had not reported the nature of his injury because he thought his vision would return on its own. Id. A visual acuity test revealed the vision in Plaintiff's right eye to be 20/400 and 20/20 in the left eye. Additionally, Tessema noted that Plaintiff's right pupil was irregular and torn and that his eye was red. Tessema continued the sulfacetamide sodium eye drops ordered by Hammond earlier and ordered an optometry evaluation as soon as possible for Plaintiff's vision loss. Id.

On October 10, 2007, Plaintiff was evaluated by an optometrist at WCI. The optometrist's impression was that Plaintiff had a lacerated globe (eyeball), subluxation of the lens, and iridocyclitis of the right eye. ECF No. 20 at Ex. C, p. 11. On October 12, 2007, Medical Defendants state that Plaintiff was transferred to Johns Hopkins Hospital where he underwent surgery performed by Dr. Michael Emerson, to repair the injuries to his right eye. Id. at pp. 12 – 17. At Johns Hopkins, Plaintiff claimed he had been hit in the eye with a fist and had felt a gush of fluid from his eye immediately after the incident. Id. In addition, Plaintiff told Emerson he continued to experience fluid draining from his eye. On October 13, 2007, Plaintiff was discharged from Johns Hopkins with orders for eye medications and ibuprofen for pain. Id. Plaintiff was then observed as an inpatient in the WCI infirmary until October 20, 2007. Id. at Ex. A, p. 5; Ex. C, pp. 18 – 22.

On October 23, 2007, Defendants state that Plaintiff was returned to Johns Hopkins for removal of his sutures. Dr. Emerson noted that Plaintiff's eye had "good oil fill" and "mild persisting retinal elevation." In addition Emerson noted that Plaintiff was experiencing recurring proliferative vitreoretinopathy that was present before the surgery. Plaintiff was returned to the WCI infirmary where he complained of pain and discomfort. Plaintiff was given Ultram, a narcotic strength pain reliever, and was discharged to his housing unit the next day with that

prescription. ECF No. 20 at Ex. A, p. 6; Ex. C, pp. 30 – 34. Aftercare for Plaintiff's eye continued and included follow-up appointments with Emerson at Johns Hopkins as well as pain medication and eye drops.

## II. Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (internal quotation marks omitted) (quoting Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)).

**III. Analysis**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Gregg v. Georgia, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." De'Lonta v. Angelone, 330 F. 3d 630, 633 (4th Cir. 2003) citing Wilson v. Seiter, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. See Farmer v. Brennan, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. See Hudson v. McMillian, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires "subjective recklessness" in the face of the serious medical condition. See Farmer, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." Rich v. Bruce, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" Brice v. Virginia Beach Correctional Center, 58 F. 3d

101, 105 (4th Cir. 1995), quoting Farmer, 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." Farmer, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. See Brown, 240 F. 3d at 390; citing Liebe v. Norton, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

With respect to Defendants Trenum and Tessema, the issue is whether their failure to secure appropriate care for Plaintiff's eye injury on the date they became aware of the problem amounted to deliberate indifference to a serious medical need. It is clear that Plaintiff's injury was serious, but it is not clear whether Trenum should have known that Plaintiff's eye required emergency trauma care. The undisputed facts are that Plaintiff's eye was injured on September 25, 2007 but did not bring the injury to the attention of medical staff until October 1, 2007. Plaintiff does not deny that he was seen for other medical matters on September 26, 2007, nor does he deny that he failed to mention his eye injury at that time. Plaintiff also does not deny that he failed to tell Trenum how his eye came to be in the state it was in; rather, he asserts she should have known it was serious through observation. Based on the record evidence, the initial delay cannot be attributed to deliberate indifference on Trenum's part, and she is entitled to summary judgment in her favor.

Tessema first became aware of Plaintiff's injury on October 4, 2007, when he saw Plaintiff on an unrelated matter. Tessema recognized that Plaintiff's eye needed specialized attention but did not surmise the extent of his injury. "[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." Johnson v. Quinones, 145 F. 3d 164, 166 (4th Cir. 1998). Without evidence that a

7

doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. See id. at 169 (actions inconsistent with an effort to hide a serious medical condition refute presence of doctor's subjective knowledge). Tessema arranged for Plaintiff to see an eye doctor on the next available date and it was only when the specialist examined Plaintiff that the true extent of his injury was known. There is no claim that there was an unreasonable delay between the time that Plaintiff's eye injury was properly diagnosed and the surgical repair of his injury. Accordingly, Tessema is entitled to summary judgment in his favor.

A separate Order entering summary judgment in favor of Tessema and Trenum follows. The remainder of the Complaint against other Defendants remains pending.

June 1, 2011                                              /s/
                                                  _____
                                                  Benson Everett Legg
                                                  United States District Judge